IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREA HILL, as Mother and
Natural Guardian of Kyle Hill,

    Plaintiff,

v.

RICHARD D. ST. ONGE, M.D., et al.,

    Defendants.

Case No. 2:06-cv-329

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE MARK R. ABEL

## ORDER

This matter is before the Court on Defendant's Motion for Protective Orders from Plaintiff's Discovery. (Document 63.) For the reasons that follow, Defendant's Motion is **GRANTED** in part and **DENIED** in part as moot.

### I. Background

Plaintiff Andrea Hill, individually and as mother and natural guardian of Kyle Hill, sued Defendants M.D. Richard D. St. Onge, M.D. Lyndon B. Gaines, and Holzer Clinic, Inc. for medical malpractice relating to the care Defendants rendered to Plaintiff and her son, Kyle Hill, in connection with Plaintiff's pregnancy and the delivery of Kyle on January 14, 2002. (Compl. ¶¶ 14–21.) The complaint made no allegations relating to Dr. St. Onge's mental status or health at the time of the alleged negligence.

In April 2009, as the parties were preparing for trial, Dr. St. Onge lost his medical licenses in West Virginia and Ohio due to allegations that he had exposed himself to a patient in June 2007. (Mot. 2.) The Notice of Summary Suspension and Opportunity for Hearing ("Notice") issued by the State Medical Board of Ohio on April 8, 2009 refers to:

> reports that [Dr. St. Onge] may suffer from various mental health illnesses, including bipolar disorder, depression, sexual health disorders, and suicidal

ideations; reports that [he] entered inpatient treatment at two out-of-state psychiatric treatment centers; and reports that as recently as in or about September 2008, [his] healthcare provider recommended [that he was] not fit to practice medicine.

(Mot. Ex. 2 at 30–31.) The Notice stated that a board-approved evaluator had determined Dr. St. Onge to be "unable . . . to practice according to acceptable and prevailing standards of care by reason of mental illness," and that Dr. St. Onge's "sexual compulsions, hypersexuality, impulsivity, narcissism and grandiosity impair [his] professional relationships with patients, judgment, and ability to understand and carry out [his] fiduciary responsibility to [his] patients." (*Id.* at 31.)

Following Dr. St. Onge's loss of his licenses, Plaintiff issued various forms of discovery requests inquiring into possible sexual misconduct, drug trafficking, drug abuse, and other bad acts by Dr. St. Onge. Plaintiff's requests included subpoenas duces tecum to several law enforcement agencies; subpoena duces tecum to the Holzer Medical Center; a Request for Admissions, Interrogatories and Request for Production of Documents; and a Notice of Deposition of each named defendant. (Mot. at 4.) Plaintiff has also requested an independent medical examination of Dr. St. Onge, which Defendants oppose.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion as to all discovery relating to Dr. St. Onge's mental health, including the request for a medical examination, and all discovery relating to possible sexual misconduct, drug trafficking, drug abuse, and other bad acts by Dr. St. Onge.

At a status conference on August 12, 2009, the parties informed the Court that the law enforcement agencies had responded to the subpoenas duces tecum, indicating that they had no documents responsive to the request. Defendants' Motion is therefore **DENIED** as moot as to the subpoenas duces tecum to the law enforcement agencies.

2

## II. Discussion

### A. Independent Medical Examination

Civil Rule 35 provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). The requirements of Rule 35 are "not a mere formality," and "are not met by mere conclusory allegations of the pleadings -- nor by mere relevance to the case," but rather "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).

The Supreme Court held in *Schlagenhauf* that Rule 35 "requires discriminating application by the trial judge, who must decide . . . whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements . . . are necessarily related." It means, further, that "the movant must produce sufficient information . . . so that the district judge can fulfill his function mandated by the Rule." *Schlagenhauf*, 379 at 118–19.

Pleadings alone will sometimes meet the requirements of Rule 35. For example, a plaintiff who asserts a mental or physical injury places that injury clearly in controversy and provides the opposing party with good cause for an examination to determine the existence and extent of such asserted injury or condition; likewise for a defendant who asserts a mental or physical condition as a defense to a claim. *Schlagenhauf*, 379 U.S. at 119. However, the "good cause" and "in controversy" requirements of Rule 35 make it clear that "sweeping examinations

3

of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident -- or, as in [*Schlagenhauf*], two accidents -- and a general charge of negligence is lodged." *Id.*, 379 U.S. at 121. Further, "[m]ental and physical examinations are only to be ordered upon a *discriminating application by the district judge of the limitations prescribed by the Rule*. To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases." *Id.*, 379 U.S. at 121–22 (emphasis added).

In *Schlagenhauf*, bus passengers injured when a bus struck a tractor-trailer sued the owners and drivers of the bus and the tractor-trailer. *Schlagenhauf*, 379 U.S. at 106–07. Alleging that the accident was caused by the bus driver's negligence and that the bus driver's vision was faulty, the tractor-trailer owners petitioned the court for examinations of the bus driver in the fields of internal medicine, ophthalmology, neurology, and psychiatry. *Id.*, 379 at 107. Because the bus driver "did not assert his mental or physical condition either in support of or in defense of a claim," but rather "[h]is condition was sought to be placed in issue by other parties," the Court held that the parties seeking the examinations must "make an affirmative showing that [the bus driver's] mental or physical condition was in controversy and that there was good cause for the examinations requested." *Id.*, 379 U.S. at 119–20.

The only allegations and evidence in support of the examinations were (1) a "conclusory" allegation that the bus driver's "eyes and vision" were "impaired and deficient," (2) an affidavit stating that the bus driver had admitted at deposition that he saw red lights for 10-15 seconds prior to the collision but did not alter his speed or course, and (3) an affidavit stating that an eyewitness had testified that he had clearly seen the tractor-trailer's lights for a distance of three-quarters to one-half mile from its rear. *Schlagenhauf*, 379 U.S. at 120. Considering the above,

4

the Court noted that if only a visual examination had been ordered, the Court "would be hesitant to set [it] aside." *Id.*, 379 U.S. at 121 (citing *Harabedian v. Superior Court*, No. 25603, 195 Cal. App. 2d 26, 31–32 (Cal. App. Aug. 18, 1961) (where the defendant-driver admitted a congenital defect and "blurring," the court properly found that the defendant driver's eyesight was in controversy and ordered an ophthalmological examination); *compare Laubscher v. Blake*, No. 9568, 7 Cal. App. 2d 376, 383 (Cal. App. June 4, 1935) (where "nothing in the circumstances surrounding the accident . . . indicate[d] that said defendant's vision was defective," the court properly denied a motion for an examination)). As for the other examinations requested, the Court concluded that nothing in the record "would afford a basis for a belief that Schlagenhauf was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological examinations," "[n]or is there anything stated justifying the broad internal medicine examination." *Id.*, 379 U.S. at 120–21.

In this case, the pleadings alone do not meet the requirements of Rule 35.[1] Dr. St. Onge has not asserted a mental or physical condition as a defense to Plaintiff's claim. Therefore, to obtain a Rule 35 examination, Plaintiff must produce sufficient information showing that Defendant's mental health is "really and genuinely in controversy and that good cause exists for ordering" such an examination. *Schlagenhauf*, 379 at 118–19. The Court must conduct a "discriminating application" of the Rule 35 requirements; otherwise, "such examinations could be ordered routinely" against defendants in malpractice and other negligence cases. *See id.*, 379 U.S. at 121–22.

In determining whether Dr. St. Onge's mental health is in controversy, the Court first looks to the elements of Plaintiff's claim. In order to prove her case, Plaintiff must establish the elements of medical malpractice under Ohio law: "(1) a duty running from the defendant to the

---

[1] The Court construes the expert affidavit filed by Plaintiff on August 11, 2009 as a Rule 35 motion.

5

plaintiff, (2) a breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) a proximate causal relationship between the breach of duty and the damages." *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assocs.*, 108 Ohio St. 3d 494, 498 (Oh. 2006) (citing *Hester v. Dwivedi*, 89 Ohio St.3d 575, 578 (Oh. 2000)). To show that a defendant has breached his duty to the plaintiff, the plaintiff must show that the defendant did "some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances," or failed or omitted "to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances." *See Bruni v. Tatsumi*, 46 Ohio St. 2d 127, 132 (Oh. 1976).

The Court finds that none of these elements, which are the basis for relevance and probative value, relate to the doctor's state of mind or subjective behavior. In other words, the question of whether Dr. St. Onge was negligent is not subjective, but objective.

Plaintiff contends that Dr. St. Onge's mental condition is "in controversy" because the doctor's mental health status at the time of the alleged negligence may have impaired his decision-making ability. The Court finds, however, that Dr. St. Onge's mental health is not probative evidence of the issue in controversy, which is whether Dr. St. Onge's conduct constituted negligence according to Ohio law, as described above. While Dr. St. Onge's mental state in January 2002 may shed light on the *reason* for the alleged negligence, it is not probative as to whether negligence actually occurred—it is just too attenuated. *See Sacramona v. Bridgestone/Firestone*, 152 F.R.D. 428, 431 (D. Mass. 1993) (denying a blood test to diagnose HIV/AIDS as too attenuated where "defendants are asking this court to take extraordinary measures because plaintiff's admitted lifestyle is relevant to the possibility that plaintiff might be infected with AIDS, which is relevant to plaintiff's life expectancy, which is relevant to future

6

damages in plaintiff's underlying cause of action"). Even if the Court were to find that Dr. St. Onge's mental health as of January 2002 were relevant, the Court would not be convinced that an examination of Dr. St. Onge, conducted more than seven years after the alleged negligence occurred, could produce probative evidence. To the extent that it may reveal relevant evidence, the prejudicial effect of such evidence would significantly outweigh its probative value.

To demonstrate that evidence of impairment can be probative of whether negligence occurred, Plaintiff cites *Macsenti v. Becker*, 237 F.3d 1223 (10th Cir. 2001), and *Bevevino v. Saydjari*, 574 F.2d 676 (2d Cir. 1978).

In *Macsenti*, the plaintiff patient presented evidence that the defendant dentist was abusing a drug (nitrous oxide) twelve days before the alleged negligence occurred. *Id.*, 237 F.3d at 1236. The court allowed it as evidence of "erratic or unusual behavior . . . immediately before the event," meaning "no more than two weeks before the event." *Id.*, 237 F.3d at 1236. While the defendant contended that the potential for unfair prejudice substantially outweighed the probative value, the Tenth Circuit upheld the trial judge's apparent determination that the evidence was relevant to the plaintiff's theory that the defendant "was either under the influence of some type of drugs or medication or was experiencing symptoms of withdrawal." *Id.*, 237 F.3d at 1237.

In *Bevevino*, the defendant doctor had been treated for an eye disability at the time he treated the plaintiff patient. *Id.*, 574 F.2d at 687. In fact, the plaintiff introduced disability insurance applications or reports in which the defendant doctor had "represented that because his sight was impaired in both eyes he could not perform his job properly." *Id.*, 574 F.2d at 679 n.9. The doctor contended that the plaintiff's theory of negligence was simply that the doctor failed to treat the plaintiff, and that the state of the doctor's vision was irrelevant. *Id.*, 574 F.2d at 687.

7

The Second Circuit upheld the district court's decision to permit evidence of the defendant doctor's eye disability, noting that "the jury could have inferred that the doctor's impaired vision precluded him from recognizing the gravity of the injury and thus from properly treating" the plaintiff. *Id.*, 574 F.2d at 687. The court also found that the doctor's poor eyesight was relevant to the plaintiff's theories that the doctor negligently failed to read a consultation report and incompetently sutured plaintiff's laceration. *Id.*, 574 F.2d at 687–88. Thus, the court held that "the judge correctly charged the jury to consider whether the doctor's disability, if any, impaired his ability to act carefully under the facts and circumstances of the case." *Id.*, 574 F.2d at 688.

These cases are distinguishable from the case at bar. Unlike the parties sought to be examined in *Macsenti* and *Bevenino*, it is not alleged here that Dr. St. Onge voluntarily impaired his own ability (e.g., by abusing drugs) or was on notice that his ability was impaired (e.g., by a prior diagnosis). Dr. St. Onge's unrebutted testimony is that "[p]rior to [his] suspension as a practicing physician at Holzer Clinic, [he] had never been treated for a psychiatric illness, mental disorder and/or behavior disorder by a psychiatrist, psychologist, or medical physician." (St. Onge Affidavit.) Moreover, the record contains no evidence that Dr. St. Onge was diagnosed with or was otherwise aware of any such condition prior to that time.

In this case, Plaintiff contends that Dr. St. Onge *may* have been impaired in January 2002, although nothing in the allegations of malpractice suggests such a theory. There is no evidence that the doctor was in fact impaired at that time, was aware of such alleged impairment, or did anything to cause such alleged impairment. Moreover, Plaintiffs request an examination more than seven and a half years after the alleged negligence occurred. *See Felmly v. Hills*, 222 F.R.D. 257, 259–60 (D.V.I. 2004) (where a sixteen year old plaintiff fell from a roof, the plaintiff's treatment for attention deficit hyperactivity disorder between the ages of five and

8

eleven was too attenuated to place his mental condition in controversy); *Curtis v. Express, Inc.*, 868 F. Supp. 467, 469 (N.D.N.Y. 1994) (finding no basis for a Rule 35 examination of the plaintiff where the plaintiff alleged past pain and suffering, and made no claim of current pain and suffering or mental or psychiatric disorder); *Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 222 (S.D.N.Y. 1994) (denying a Rule 35 examination of the plaintiffs where they admitted to having undergone psychological counseling, and alleged past pain and suffering, but did not claim that their mental injury was ongoing). The Notice issued by the State Medical Board of Ohio in April 2009 does not provide good cause for the inquiry requested by Plaintiff. The fact that Dr. St. Onge was found to have exposed himself in 2007 provides no evidence of a psychological condition as to events five years earlier. Further, there is no evidence of treatment or diagnosis prior to 2007. Dr. St. Onge's alleged exposure of himself to a patient most likely would shock a typical jury; such facts would not assist the jury in analyzing the events of January 2002. Finally, such conduct does not indicate symptomatology for bipolar disorder or depression.

Under these circumstances, the Court cannot find that good cause exists for a medical examination under Rule 35, and therefore grants Defendants' Motion as to the requested examination.

### B.    Other Discovery Relating to Defendant's Mental Health

Civil Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." However, a court may, for good cause, issue an order forbidding discovery or "forbidding inquiry into certain matters" in order to protect a party

from "annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c)(1)(A); Rule 26(c)(1)(D).

As discussed above, Dr. St. Onge's mental health is not probative of the issues in this case. To the extent that related discovery may reveal relevant evidence, the prejudicial effect of such evidence would significantly outweigh its probative value. The Court finds that such discovery is not likely to lead to the discovery of admissible evidence, but is certain to cause the embarrassment and oppression of Dr. St. Onge. The Court also notes that the routine discovery of mental health records would discourage doctors from seeking treatment for possible mental health ailments. The Court therefore grants Defendants' Motion as to all other discovery relating to Dr. St. Onge's mental health.

### C. Discovery Relating to Defendant's Prior Bad Acts

Defendants' Motion also requests protection from discovery related to alleged inappropriate sexual conduct, drug trafficking, and other bad acts. Contending that such discovery is appropriate, Plaintiff points to Dr. St. Onge's prior bad acts, closer in time to the alleged negligence, as evidence that the doctor was afflicted with a mental health condition at that time. (Pl.'s Mem. Contra 6, 9; Pl.'s Surreply 7–11.) Plaintiff does not contend that such discovery is appropriate for any other purpose.

The Court finds that these bad acts are highly prejudicial and, more importantly, not probative evidence of a mental health condition. Because such discovery is not likely to lead to evidence that is admissible under Rules 403, 404, and 608, the Court finds that it does not justify the annoyance, embarrassment, and oppression that such discovery would undoubtedly inflict on Dr. St. Onge. *See* Rule 26(c)(1). The Court therefore **GRANTS** Defendants' Motion as to all discovery relating to Dr. St. Onge's alleged prior bad acts.

## III. Conclusion

For the reasons discussed above, Defendant's Motion for Protective Orders from Plaintiff's Discovery (Document 63) is hereby **GRANTED** as to all discovery relating to Dr. St. Onge's mental health, including the request for a medical evaluation, and all discovery relating to possible sexual misconduct, drug trafficking, drug abuse, and other bad acts by Dr. St. Onge; and **DENIED** as moot as to the subpoenas duces tecum to law enforcement agencies.

**IT IS SO ORDERED.**

8-18-2009
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

11